UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                **MEMORANDUM & ORDER**
                17-CR-142 (MKB)

v.

LINDSAY APPLEWHITE,

    Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

  On October 30, 2017, Lindsay Applewhite pleaded guilty to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and to discharging a firearm in furtherance of that robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Oct. 30, 2017 Plea Hr'g Tr. ("Plea Tr.") 27–29, Docket Entry No. 43.) On December 4, 2018, the Court sentenced Applewhite to consecutive sentences of thirty-six months' imprisonment on the Hobbs Act robbery conviction and one hundred and twenty months' imprisonment on the firearm conviction, to be followed by three years of supervised release, and ordered Applewhite to pay $42,234.66 in restitution as well as a $200 mandatory assessment. (J. of Conviction 1, 6, Docket Entry No. 80.)

  On September 3, 2020, Applewhite filed a motion for compassionate release seeking to convert the remaining portion of his sentence to supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] In support, Applewhite argues that his medical conditions and resulting heightened vulnerability to COVID-19, which is spreading within the facility, his strong family and community relationships, and his rehabilitation while incarcerated warrant the modification

---

[1] (Letter dated Sept. 3, 2020 ("Def.'s Letter"), Docket Entry No. 97; Def.'s Mot. for Compassionate Release ("Def.'s Mot."), Docket Entry No. 98; Counsel's Suppl. Br. in Supp. of Def.'s Mot. ("Suppl. Mot."), Docket Entry No. 102.)

of his sentence. (Def.'s Letter 1, 3; Def.'s Mot. 2–5; Suppl. Mot. 3–11.) The government opposes the motion on substantive grounds, arguing that the Court should deny the motion because the United States Penitentiary in Hazelton, West Virginia ("USP Hazelton") has taken successful measures to mitigate the spread of COVID-19 and because the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of Applewhite's continued incarceration. (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n") 5–6, Docket Entry No. 99; Letter Resp. to Suppl. Mot. ("Gov't Letter"), Docket Entry No. 103.)[2]

For the reasons discussed below, the Court denies Applewhite's motion for compassionate release.

## I. Background

### a. Investigation, plea, and sentencing

In 2016, agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the New York City Police Department ("NYPD") Joint Robbery Task Force investigated a series of robberies at cellular telephone stores and learned that Applewhite, his two co-defendants, and others "would enter a store, display a firearm, ha[ve] the customers and employees duct tape themselves as restraint, and steal money and merchandise." (Presentence Investigation Report ("PSR") ¶ 6, Docket Entry No. 67.) Applewhite was the leader and organizer of these robberies. (*Id.*) The PSR reflects that Applewhite participated in armed robberies (1) on November 20, 2016, when items valued at $32,950 (including forty-five cellular telephones and $3,500 in cash) were stolen from a Sprint store, (2) on December 3, 2016, when

---

[2] Applewhite argues that he has exhausted his administrative remedies, (Suppl. Mot. 1–2), and the government declines to argue otherwise, (Gov't Opp'n 3 n.2). The Court assumes for purposes of this Memorandum and Order that Applewhite has exhausted his administrative remedies, and addresses the merits of his argument.

one of Applewhite's fellow robbers shot at a store employee and items valued at $42,234.66 were stolen from a T-Mobile Store, (3) on December 21, 2016, when hundreds of dollars in cash were stolen from customers as well as from a safe, Applewhite stole an employee's wallet containing debit and credit cards, and cellular telephones valued at $184,518 were stolen from an unnamed store, and (4) on December 25, 2016, when a gun was fired during a struggle between employees and a robber, and two cellular telephones and $146 in cash were stolen from a Metro PCS store.  (*Id.* ¶¶ 7–19.)  Applewhite was arrested on February 17, 2017.  (*Id.* ¶ 21.)

On October 30, 2017, Applewhite pleaded guilty to one count of Hobbs Act robbery and to one count of discharging a firearm in furtherance of that robbery.  (Plea Tr. 27–29; J. of Conviction 1.)

At a sentencing hearing held on December 4, 2018, the Court sentenced Plaintiff to thirty-six months' imprisonment on the Hobbs Act robbery count to be followed by one hundred and twenty months' imprisonment on the firearms count, and three years of supervised release with special conditions including payment of restitution in the amount of $42,234.66.  (J. of Conviction.)

   **b.**  **Compassionate release application**

On July 28, 2020, Applewhite filed a request for compassionate release with the warden at USP Hazelton, (Def.'s Mot. 5), and on August 6, 2020, the warden denied his request, (*id.*; Letter from Warden dated July 2, 2020, at 10, annexed to Def.'s Mot., Docket Entry No. 98-2).

Applewhite, who is fifty-five years old, argues that he is at particular risk if he contracts COVID-19 because (1) he was recently hospitalized for blood clots in his lungs, (2) he is receiving medical care for hypertension, high cholesterol, chronic deep vein thrombosis, and blood clotting in his lungs and legs, (3) he suffers from depression and anxiety, and (4) he is at

3

heightened risk of a heart attack because of all these conditions.  (Def.'s Mot. 3.)  Applewhite currently takes aspirin, atorvastatin, heparin, hydroclorothiazide, lisinopril, and mirtazapine, and he uses a continuous positive airway pressure ("CPAP") machine at night.  (*Id.*)

Applewhite asserts that he has completed a drug treatment program and multiple re-entry programs and currently helps other inmates prepare to earn high school equivalency diplomas.  (*Id.* at 4–5.)  He also asserts that he has strong community and family ties: (1) a Narcotics Anonymous sponsor, (2) a pastor with whom he does Bible study, (3) his eighty-three-year-old mother, who suffers from dementia,[3] (4) his wife, who resides in Brooklyn, and (5) employment waiting for him at a barber shop in Brooklyn.  (*Id.* at 5.)  Applewhite states that since his incarceration, he has realized the importance of education and "want[s] to make a difference and help at risk youths" avoid guns and narcotics.  (Def.'s Letter 3.)  In further support of his motion, Applewhite adds that his wife was hospitalized for a month for COVID-19 and continues to experience respiratory problems, that his mother is at high risk, and that he wants to be available to help them.  (*Id.*)

In a supplemental application filed on December 9, 2020, Applewhite through counsel asserts that USP Hazelton and neighboring facility Federal Correctional Institution ("FCI") Hazelton have active confirmed cases of COVID-19 and the count is "rapidly rising."[4]  (Suppl.

---

[3] Defendant contends that he is his mother's "only son."  (Def.'s Mot. 5)  The PSR reflects that Defendant has three living sisters and a deceased brother.  (PSR ¶ 100.)

[4] As of December 15, 2020, the Bureau of Prisons ("BOP") reports active cases in one inmate and eighteen staff members at USP Hazelton, which has 1,476 inmates, and in four inmates and seven staff members at FCI Hazelton, which has 1,604 inmates, for a total of thirty cases among 3,080 inmates and an additional number of corrections staff.  *See* BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Dec. 15, 2020); BOP, USP Hazelton, https://www.bop.gov/locations/institutions/haz/ (last visited Dec. 13, 2020); BOP, FCI Hazelton, https://www.bop.gov/locations/institutions/haf/ (last visited Dec. 13, 2020).  Defendant reports

Mot. 1.) Applewhite reports that two COVID-19-positive inmates were transferred to USP Hazelton without proper testing, that the state of West Virginia as a whole is experiencing a serious outbreak, that the case counts reported by the Bureau of Prisons underestimate the actual numbers because only confirmed positive tests count toward official figures, and that it is impossible to effectively comply with Centers for Disease Control and Prevention ("CDC") recommendations given current prison occupancy rates. (*Id.* at 4–5.) Applewhite states that he was recently hospitalized for a pulmonary embolism, that he suffers from obesity in addition to the conditions detailed in his *pro se* submission, and that all of these conditions are either recognized by the CDC as placing Applewhite at greater risk should he contract COVID-19 or the subject of a "growing medical consensus" that they pose such a risk. (*Id.* at 3, 6–10.) Applewhite contends that he "has fully taken advantage of the rehabilitative options available to him," which are currently limited by prison lockdown conditions, has a plan to return to the community, and would be required to comply with conditions of supervised release. (*Id.* at 10–11.)

## II. Discussion

The Court finds the reduction of Applewhite's sentence to be inconsistent with the section 3553(a) factors.

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i) "empowers a court to reduce a defendant's term of imprisonment if it finds that

---

thirty-three confirmed cases of COVID-19 as of mid-November and asserts that cases have increased substantially since that time, (Suppl. Mot. 3–4), and the government's letter counts twenty-six cases between the facilities, while emphasizing that USP Hazelton and FCI Hazelton are separate facilities and that case counts are declining, (Gov't Letter 1–2).

5

'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 423 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Under section 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Thus, even if a district court decides that a movant has shown extraordinary and compelling reasons, that court must also consider whether the factors set forth in 18 U.S.C. § 3553 support release. *United States v. Roney*, No. 20-1834, --- F. App'x ---, --- 2020 WL 6387844, at *2 (2d Cir. Nov. 2, 2020) ("We need not decide whether [appellant] has proffered an extraordinary and compelling reason that warrants his release under 18 U.S.C. § 3582(c)(1)(A)(i) because, even assuming *arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that release is nevertheless unwarranted upon

6

consideration of the § 3553(a) factors.").

Although the Court takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals, such as Applewhite, with obesity, hypertension, and blood clotting conditions, (Def.'s Mot. 3; Suppl. Mot. 6–10), the Court finds that the requested relief is inconsistent with the section 3553(a) factors.

While the Court recognizes Applewhite's efforts to engage in rehabilitation since his December 4, 2018 sentencing, he committed violent robberies after numerous periods of incarceration for other violent crimes. (*See* PSR 12–26.) The Court's sentence of 156 months departed downward from the United States Sentencing Guidelines of 204 to 225 months, (Gov't Opp'n 1), Applewhite has served only about a third of that sentence, and a further reduction would not "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A). The nature and seriousness of Applewhite's crimes mandate his continued detention.

### III. Conclusion

Accordingly, for the reasons explained above, the Court denies Applewhite's motion for compassionate release.

Dated: December 15, 2020
       Brooklyn, New York

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge

7